UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY EUGENE WILLIAMS | PLAINTIFF |
| VERSUS | CIVIL ACTION NO. 1:20-CV-24-RPM |
| JOE ERRINGTON, ET AL | DEFENDANTS |

**MEMORANDUM AND ORDER OF DISMISSAL**

Before the Court is Defendants Georgia Shelby, Timothy Barnes, and Jacqueline Leverette's motion for summary judgment. Doc. [45, 46]. On January 22, 2020, Plaintiff Jeffrey Eugene Williams ("Williams"), proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint. He alleges that he was subjected to retaliation after he filed a prison grievance against Sergeant Jacqueline Leverette ("Leverette"), a corrections officer. Doc. [1]. The Court conducted a *Spears* hearing on June 15, 2021. Doc. [45-1]. Williams is currently an inmate at the South Mississippi Correctional Institution ("SMCI") following his conviction on charges of unlawful touching and exploitation. The Court previously dismissed Williams' claims concerning due process violations, retaliation as it related to the loss of his job placement, and supervisory liability for failure to train. Doc. [39]. Williams' remaining claims include (i) retaliation against Leverette, and (ii) direct supervisory liability against Georgia Shelby ("Shelby") and Timothy Barnes ("Barnes"). Defendants move for summary judgment on both claims. Williams did not file a response to the motion for summary judgment.

I. BACKGROUND

On October 4, 2019, Williams filed a grievance with the Mississippi Department of Corrections following an encounter with Leverette. He requested Leverette be reprimanded. Doc. [45-2], at 3–4. This grievance is the subject of the present lawsuit. Williams has a history of filing grievances

concerning Leverette. In weeks prior, Williams filed grievances claiming Leverette did not treat inmates fairly. Doc. [45-2], at 7–9. Prison officials investigated and found no wrongdoing by Leverette. He alleges that Leverette related against him for filing a grievance by transferring him to Housing Unit 8. Until October 4, 2019, Williams had been housed in Unit 10 at SCMI. On October 8, 2019, Williams was moved from housing Unit 10 to Unit 8. Doc. [45-4], at 15.

II. APPLICABLE LAW

a. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). The movant must "demonstrate the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law." *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

b. Retaliation

A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995)). "To prevail on a claim of retaliation, a prisoner must establish: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998). The Fifth Circuit has called for close scrutiny of retaliation claims in the prison context. *Woods*, 60 F.3d at 1166 ("[c]laims of retaliation must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions"). The Fifth Circuit has explained:

> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident-such as the filing of disciplinary reports would not have occurred. This places a significant burden on the inmate. Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

*Woods*, 60 F.3d at 1166 (internal citations and footnotes omitted).

c. Supervisory Liability

Section 1983 does not attach liability to supervisory officials for the misdeeds of their subordinates under a theory of vicarious liability or *respondeat superior*. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Instead, "[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir.

3

2011) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

III. DISCUSSION

a. Retaliation Claim

Williams argues that he submitted a prison grievance alleging Leverette engaged in misconduct. He contends that Leverette then retaliated against by him by falsely reporting Williams for trafficking contraband. He also argues that he was moved to a more violent prison unit as retaliation for filing the grievance. Doc. [1].

As to the assertion of a specific constitutional right, this element is undisputed. Doc. [46], at 8. Doc. [4]. Williams has a right to file grievances; and thus, he has asserted a protected constitutional right. *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017).

As to the defendant's intent to retaliate, Williams asserts that Leverette directed his transfer as an act of retaliation. At the *Spears* hearing, Williams asserted that his transfer order indicated Leverette reported Williams for contraband. Doc. [45-1], at 19. He implied that Leverette accused him of trafficking contraband, which he contends was a false allegation that led to his housing unit transfer. Doc. [45-1]. However, Williams testified he was unable to produce any documentation to support that assertion. Doc. [45-1], at 19. In contrast, Defendants point to Williams' institutional records that indicate his transfer was due to an "administrative move" and made no mention of Leverette. Doc. [45-4], at 15. Additionally, Defendants provide a timeline of events. The timeline demonstrates Leverette was not personally aware of Williams' grievance. Defendants show that Williams' grievance was submitted on October 4, 2019. Doc. [45-2], at 3. Williams was moved on October 8, 2019. Doc. [45-4], at 15. However, his grievance was not processed and assigned to an administrator for review until October 10, 2019. Doc. [45-2], at 6. So, Defendants argue an

administrator would not have investigated or discussed Williams' allegations with Leverette until after Williams had been moved. Doc. [46].

This timeline supports the conclusion that Leverette was not involved in the retaliation against Williams. Further, Williams has failed to provide any evidence of a false allegation by Leverette, and hence any personal involvement. Thus, he fails to contradict Defendants' summary judgment evidence. Since Williams has not raised a factual issue about Leverette's personal involvement, he cannot overcome summary judgment as to the second prong of his retaliation claim. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (holding that a plaintiff bringing a section 1983 action must "specify the personal involvement of each defendant").

As to a retaliatory adverse act, Williams claims that he was transferred to a more violent housing unit because of his grievance against Leverette. Doc. [4]. In his complaint, Williams asserts he was moved from Unit 10 to Unit 8. He describes Unit 8 as housing for inmates with rule violations and "essentially a lockdown unit." Doc. [1], at 13. Plaintiffs must establish a retaliatory adverse act to make out a retaliation claim. A qualifying "retaliatory adverse act . . . [is one] capable of deterring a person of ordinary firmness from further exercising his constitutional rights" *Morris*, 449 F.3d at 686. The Fifth Circuit has found a transfer to a more dangerous unit to be a sufficient adverse retaliatory act. *See Morris*, 449 F.3d at 687.

At the *Spears* hearing, Williams asserted that he was threatened by gang members the day he moved into Unit 8. Doc. [45-1], at 38–39. Defendants do not dispute this fact. However, Defendants argue the transfer to Unit 8 does not rise to the level of an adverse action because Williams was only in the unit for a matter of hours. Once Williams reported the threats, he was moved to another unit. Williams stated at the *Spears* hearing that he was not physically harmed in Unit 8. Doc. [45-1], at 13. He explained that he "prevented" injury by informing jail officials about

5

potential threats. Williams was only in Unit 8 for a total of three hours. Doc. [46], at 14. Williams' institutional records indicate he was moved to Unit 8 at 11:00 AM and then moved again around 3:00 PM to a different unit. Doc. [45-4], at 15.

As further support that Williams' transfer did not pose additional dangers, Defendants highlight Williams' later testimony at the *Spears* hearing. There, Williams testified that Unit 8 is a general population unit. Doc. [45-1], at 37. Defendants provide an affidavit by Leverette stating "based upon my knowledge and experience as a tower guard, Unit 8 is not more dangerous than other housing units at SMCI. In 2019, Unit 8 was not designated for close custody inmates, inmates who posed a security risk, or inmates with multiple rule violation reports." Doc. [45-5], at 2. Moreover, Defendants contend that Williams' complaint stems from his preference to stay in Unit 10. A preference to stay in one unit does not rise to the level of a retaliatory adverse act. Doc. [46], at 14; *See Escobarrivera v. Vannoy*, 2021 WL 1604872, at *9 (M.D. La. Feb. 24, 2021) (mere transfer to a less desirable dormitory cannot state a claim of retaliation); *Jasmine v. Cain*, 2014 WL 971989, at *4 (M.D. La. Mar. 12, 2014); *Routt v. Howard*, 764 F. App'x 762, 769–70 (10th Cir. 2019); *Hunnicutt v. DeSantiago*, 429 F. Supp. 3d 905, 918 (D.N.M. 2019); *Johnson v. Kellison*, 2929 WL 5748785, at *9 (D. Colo. Sept. 25, 2020). Like Williams, these cases involve ordinary prison transfers that do not involve aggravating factors; and thus, do not constitute an adverse action.

Defendants have presented probative evidence that Williams' transfer to Unit 8 was not any more violent than his current unit. Williams was only in Unit 8 for a few hours, and he testified at the *Spears* hearing that the unit was for general population. He presents conclusory allegations and fails to contradict Defendants' summary judgment evidence. Thus, Williams cannot establish a

retaliatory act "capable of deterring a person of ordinary fitness from further exercising his constitutional rights." *Morris*, 449 F.3d at 686.

As to causation, the plaintiff must establish that but for the retaliatory motive the complained of incident would not have occurred. *Foxx v. Mississippi*, 2019 WL 2998570, at *2 (S.D. Miss. June 5, 2019); *Foxx v. Cooley*, 2019 WL 2995925, at *1 (S.D. Miss. July 9, 2019) (citing *McDonald*, 132 F.3d at 231)). The causation prong poses a significant obstacle to prisoners asserting retaliation claims. *Kolb v. Jordan*, 2021 WL 6052410, at *4 (E.D. La. Sept. 27, 2021). "[T]o state a claim of retaliation an inmate must . . . be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. Conclusory allegations will not suffice. The inmate must produce direct evidence or a chronology of events. *Id.*; *See generally Williams v. Miss. Dep't of Corr.*, 2016 WL 1169486, at *4 (N.D. Miss. Mar. 22, 2016); *Parker v. Fisk*, 487 F. App'x. 148, 150 (5th Cir. 2012) (affirming dismissal of retaliation claim where prisoner failed to allege a "specific fact" supporting retaliation). In the absence of such allegations, the only link between the denial of services and alleged protected conduct is temporal proximity, which "[t]he Fifth Circuit has rejected . . . as showing causation in the context of § 1983 retaliation cases based on prisoner grievances." *Dotie v. Jones*, 2010 WL 2668379, at *2 (N.D. Tex. June 16, 2010) (citing *Reeves v. Wood*, 206 F. App'x. 368, 370 (5th Cir. 2006)).

Williams has neither produced any evidence concerning causation nor alleged a chronology of events. Williams merely provides unsubstantiated allegations of Leverette's involvement in his transfer. Thus, he cannot establish the necessary causal link to contradict Defendants' summary judgment evidence.

7

Williams has not met his burden of showing specific facts that present a genuine issue for trial. Further, the Court does not find any evidence demonstrating a genuine issue of material fact. Defendants are entitled to summary judgment on Williams' retaliation claim.

b.  Supervisory Liability

Plaintiff alleges that Deputy Warden Barnes ("Barnes") and Warden Georgia Shelby ("Shelby") knew that Leverette falsely accused Williams of trafficking contraband but signed off on his transfer anyway. Doc. [45-1], at 19. Defendants argue that this claim fails for the same reason Williams' retaliation claim fails. Specifically, that Williams wholly lacks evidence to support his allegation that Leverette provided a false accusation. Doc. [46]. As noted earlier, there is no support in the record that Leverette had any personal involvement or opportunity to retaliate against Williams that could lead to a transfer in housing units. Also, as noted earlier, Williams failed to establish a retaliatory adverse act.  Accordingly, Williams has not identified, and the Court had not found any evidence that Barnes or Shelby affirmatively participated in the acts that caused the alleged constitutional deprivation or implemented unconstitutional policies that causally result in the alleged constitutional injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). So, there can be no basis for a supervisory liability claim. Defendants are entitled to summary judgment.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment be GRANTED. Doc. [45]. This civil action is DISMISSED WITH PREJUDICE as to all claims and all Defendants, this the 3rd day of January 2023.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE